THOMAS D. ROTH, CAL. BAR NO. 208601
LAW OFFICES OF THOMAS D. ROTH
ONE MARKET, SPEAR TOWER, SUITE 3600
SAN FRANCISCO, CALIFORNIA 94105
TELEPHONE: (415) 293-7684
FACSIMILE:  (415) 276-2376
Email: rothlaw1@comcast.net

Attorneys for Plaintiffs
FRIENDS OF OCEANO DUNES, INC. and
WILLIAM D. KNOFF, as a member of Friends
and individually

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRIENDS OF OCEANO DUNES, INC., a California not-for-profit corporation and association, and WILLIAM D. KNOFF, as a member of FRIENDS OF OCEANO DUNES, and individually<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA COASTAL COMMISSION, an agency of the State of California;<br><br>JOHN (JACK) AINSWORTH, in his official capacity as the Executive Director of the CALIFORNIA COASTAL COMMISSION; | Case No.: 2:17-cv-8733<br><br>**COMPLAINT RE VIOLATION OF THE ENDANGERED SPECIES ACT AND FOR DECLARATORY AND INJUNCTIVE RELIEF** |

CALIFORNIA DEPARTMENT OF
PARKS AND RECREATION, a
department of the State of California;

LISA MANGAT, in her official
capacity as Director of the
CALIFORNIA DEPARTMENT OF
PARKS AND RECREATION, a
department of the State of California;

SAN LUIS OBISPO COUNTY AIR
POLLUTION CONTROL DISTRICT,
a local air pollution control district;
the BOARD OF DIRECTORS OF
THE SAN LUIS OBISPO COUNTY
AIR POLLUTION CONTROL
DISTRICT, the District's governing
body;

GARY WILLEY, in his official
capacity as the Air Pollution Control
Officer of the SAN LUIS OBISPO
COUNTY AIR POLLUTION
CONTROL DISTRICT, a local air
pollution control district;

DEBBIE ARNOLD, in her official
capacity as the Chair of the BOARD
OF DIRECTORS OF THE SAN LUIS
OBISPO COUNTY AIR POLLUTION
CONTROL DISTRICT, the District's
governing body;

CALIFORNIA AIR RESOURCES
BOARD, a State of California Board;

MARY NICHOLS, in her official
capacity as the Chair of the
CALIFORNIA AIR RESOURCES
BOARD, a State of California Board;

SAN LUIS OBISPO COUNTY, a
governmental unit and subdivision of
the State of California;

JOHN PESHONG, in his official
capacity as Chair of the Board of
Supervisors of SAN LUIS OBISPO

1 | COUNTY, a governmental unit and
2 | subdivision of the State of California;

3 | the CITY OF GROVER BEACH, an
4 | incorporated City in San Luis Obispo County, California;

5 | JOHN P. SHOALS, in his official
6 | capacity as Mayor of the CITY OF GROVER BEACH, an incorporated
7 | City in San Luis Obispo County, California; and

8 |
9 | DOES 1-10, inclusive,
              Defendants.
10 |

11 |

12 |

13 | Plaintiffs, Friends of Oceano Dunes, Inc., on behalf of itself and its

14 | members ("Friends"), and William D. Knoff, as a member of Friends and

15 | individually (collectively referred to as "Plaintiffs"), allege the following:

16 |

17 | **JURISDICTION AND VENUE**

18 | 1.  This Court has jurisdiction over this action pursuant to the

19 | Endangered Species Act ("ESA"), 16 U.S.C. § 1531-1544 (see also 16 U.S.C. §

20 | 1540(c)); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2201

21 | (declaratory judgment), and 28 U.S.C. § 2202 (injunctive relief).

22 | 2.  An actual, justiciable controversy now exists concerning

23 | prospective violations of § 9 of the ESA, 16 U.S.C. § 1538, between Plaintiffs

24 | Friends, its members and Mr. Knoff, and Defendants, the California Coastal

25 | Commission (the "CCC"); John (Jack) Ainsworth, in his official capacity as

26 | the Executive Director of the CCC; the California Department of Parks and

27 | Recreation ("State Parks"); Lisa Mangat, in her official capacity as the

28 |

Director of State Parks; the San Luis Obispo County Air Pollution Control District and its Board of Directors (collectively, the "Air District"); Gary Willey, in his official capacity as the Air Pollution Control Officer of the Air District; Debbie Arnorld, in her official capacity as Chair of the Air District Board of Directors; the California State Air Resources Board ("CARB"); Mary Nichols, in her official capacity as the Chair of CARB; the County of San Luis Obispo, California ("SLO County"); John Peshong, in his official capacity as Chair of the SLO County Board of Supervisors; the City of Grover Beach (the "City"); John P. Shoals, in his official capacity as Mayor of the City of Grover Beach; and Does 1 through 10 (collectively refered to as "Defendants").

2.   Relief is proper under 28 U.S.C. § 2201 (declaratory judgment) and 28 U.S.C. § 2202 (injunctive relief).

3.   Venue lies in this judicial district under 16 U.S.C. § 1540(g)(3)(A) because the violations of the ESA will occur in this district within San Luis Obispo County, California, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims will occur in this district, and pursuant to 28 U.S.C. § 1391(c) because one or more of the defendants reside in this district.

4.   The ESA authorizes "any person," such as Friends and Mr. Knoff, to commence a civil suit to "enjoin any person, including . . . any . . . governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. 1540(g)(1)(A).  This lawsuit against state governmental entities, like those here, is authorized and permitted by the U.S. Constitution as an action for prospective injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of the ESA.

Plaintiffs' lawsuit seeks prospective injunctive relief to prevent "take," i.e., the death, of two federally-protected bird species, the western snowy plover and the California least tern, in violation of § 9 of the ESA.  The take of the protected birds will be caused by actions of these state officers and the named defendants, in their official capacities.

5.   Plaintiff Friends and Plaintiff William Knoff, as a member of Friends and individually, have exhausted all required and applicable administrative remedies, if any, or it would be futile to attempt exhaustion, or they are otherwise excused due to impossibility, equitable considerations and/or equitable tolling.  In compliance with 16 U.S.C. § 1540(g), Plaintiffs delivered written notice of intent to sue regarding the violations of ESA § 9 (that will result in take of two listed bird species) to all Defendants as well as the Secretary of Interior on October 3, 2017, and Defendants have not remedied the violations of law.  Nor has the federal government sought to bring its own action.  As of the date of filing this Complaint, which satisfies the sixty (60) day notice requirement, none of the Defendants have responded to the notice or to Plaintiffs' invitation to take corrective measures or to discuss pre-litigation settlement.

## **NATURE OF ACTION**

6.   Plaintiffs bring this lawsuit to challenge Defendant CCC's September 14, 2017 approval, subsequent October 11, 2017 approval of Revised Findings for the permit approval, and related issuance of a coastal development permit to State Parks for expansive dust control measures ("Dust Control Measures") for Oceano Dunes State Vehicular Recreation Area (SVRA), a state park located in San Luis Obispo County, California.

7.   The Dust Control Measures seek to implement Rule 1001, adopted by the Air District in late 2011, to address dust and particulate emissions from the SVRA. Part of Rule 1001 has been invalidated by the Court of Appeal, Second Appellate District, Division Six, in *Friends of Oceano Dunes v. San Luis Obispo County Air Pollution Control District*, 235 Cal.App.4th 957 (2015).

8.   The Dust Control Measures are a major public works project, *see* Cal. Pub. Res. Code § 30114(c), involving hundreds of acres of dust emissions control measures and mechanisms at Oceano Dunes SVRA.  After Friends initiated legal actions under the California Coastal Act to block State Parks from implementing the Dust Control Measures without a proper coastal development permit from the CCC, State Parks finally applied for a permit. Friends alerted State Parks that its proposed Dust Control Measures would result in take of the federally-protected western snowy plover and California least tern, and adverse modification of plover critical habitat.  In response, State Parks modified the project to avoid critical habitat designated by the U.S. Fish and Wildlife Service and in an effort to avoid take.  Friends again alerted State Parks that its proposed Dust Control Measures would result in take based on biological studies and reports prepared by experts. Subsequently, the CCC unilaterally expanded authorization to install the Dust Control Measures by dispensing with many of the mitigation measures that State Parks had proposed.  This vast expansion allows the Dust Control Measures to cover up to 3,500 acres, rather than the originally proposed 100 acres, and to be implemented within currently designated critical habitat for the federally-protected western snowy plover, even during the nesting and breeding season.

9.   Federal law provides that government agencies charged or tasked with land or resource management (including governmental authorization, mandate or direction to third parties) engage in a take in violation of ESA § 9 both by conduct and the failure to act that results in death and harm to a listed species, or significant impairment of habitat or breeding patterns of the species.  As detailed herein, the CCC and other named governmental defendants, and their officers, acting in their official capacities have approved, authorized, permitted, mandated, allowed  and directed installation of the Dust Control Measures in a way that will result in take of the federally protected plover and tern, in violation of ESA § 9.  Plaintiffs' action seeks to enjoin these approvals and the corresponding installation of the Dust Control Measures.

## **PARTIES**

10.  Plaintiff, FRIENDS OF OCEANO DUNES, Inc., ("Friends") is a California not-for-profit corporation and watchdog association, representing approximately 28,000 members and users of the Oceano Dunes State Vehicle Recreation Area ("SVRA").  Friends was formed under California law in 2001 for the express purpose of "preserving and developing recreational uses" in the "Oceano Dunes area" of San Luis Obispo County.  Friends' members routinely engage, have engaged and plan to continue to engage in motorized off-highway vehicle ("OHV") recreation, beach driving and beach camping at Oceano Dunes SVRA, as well as hiking and enjoyment of aesthetic, wildlife and recreational and coastal resources, habitat and species.  No less than hundreds of Friends' members engage, have engaged and plan to continue to engage in coastal access, hiking, wildlife viewing, walking on the beach, exploring, swimming, horseback riding, motorized

and non-motorized recreation, beach driving, beach camping, bird watching, surf fishing, surfing, photography of scenic views and wildlife, and observing wildlife along the coast.  They each enjoy the coastal resources at Oceano Dunes SVRA multiple times each year in these ways.  Friends' members live near, use, recreate, visit and personally enjoy the aesthetic, wildlife and recreational resources of the SVRA, including the western snowy plover and the California least tern.  Friends maintains the instant lawsuit for itself and as a representative of its injured members, including Mr. Knoff, whom it is duly authorized to represent.

11.  Plaintiff WILLIAM KNOFF is a member of Friends.  On numerous occasions since the creation of the SVRA, and as recently as the fall of 2017, Friends' member and Plaintiff Knoff visited the SVRA for the purpose of hiking, exploring and observing wildlife.  Knoff intends to visit the SVRA again in the coming months and years to engage in hiking, beach walking, beach camping, and exploring wildlife, including the western snowy plover and the California least tern.

12.  In addition, based on the experiences and activities of Friends, its members and Knoff at Oceano Dunes SVRA (including serving on government-sponsored and -sanctioned technical committees evaluating conflicts between recreation and protected species at Oceano Dunes SVRA), Friends' members, including its President, Mr. Jim Suty, and Knoff, a Friends' Board member, have developed expertise in how best to manage potential and actual conflicts between sensitive wildlife, including the western snowy plover and the California least tern, and human activities. The actions of the CCC and the other governmental defendants in this case, including the approval and issuance of the coastal development permit authorizing the expanded Dust Control Measures (and other related

approvals and authorizations) that will result in take of the federally-protected western snowy plover and California least tern, and their respective adverse modification of the birds' occupied habitat, are detrimental to the above-stated interests of Plaintiffs.  The wildlife, conservation, aesthetic, recreational and public participation interests of Plaintiff Friends, its members and Knoff, as a member and individually, are being and will continue to be, adversely affected and irreparably injured by the CCC's and governmental defendants' authorizations and mandates that compel placement of the Dust Control Measures at locations within Oceano Dunes SVRA that will result in take of the two protected bird species to Plaintiffs' detriment.

13.  The injuries described above are actual, concrete injuries suffered by Friends, its members and Knoff, as a member of Friends and individually. These injuries are caused by the actions and omissions of Defendants and would be redressed by the relief sought herein. Plaintiffs have no other adequate remedy at law.  Therefore, Plaintiffs Friends, for itself and its members, and Knoff, as a member of Friends and individually, bring this action to enjoin the offending actions and activity.

14.  Defendant CCC is a state commission housed in the California Natural Resources Agency, established pursuant to the provisions of the California Coastal Act (Pub. Res. Code §§ 30000 *et seq*.).  The CCC is responsible for implementing the California Coastal Act.  Under the Coastal Act, a coastal development permit is required for development within the coastal zone, (Cal. Pub. Res. Code, § 30600, subd. (a)), and, with respect to Oceano Dunes SVRA, the CCC has assumed jurisdiction to process applications and issue coastal development permits.  On or about September 14, 2017, the CCC purported to approve and issue a coastal development

permit to for the Dust Control Measures at Oceano Dunes SVRA.  On October 11, 2017, the CCC purported to adopt Revised Findings for its September 14, 2017 approval of the permit.  The CCC issued the coastal development permit for the Dust Control Measures to State Parks, SLO County, and the City on or about September 20, 2017.

15.   Defendant John (Jack) Ainsworth is the Executive Director of the CCC.  The CCC Executive Director has jurisdiction to issue coastal development permits under the California Coastal Act, and he issued the coastal development permit at issue here. He is sued in his official capacity.

16.   Defendant State Parks is, and has been, the State of California department responsible for managing and operating Oceano Dunes SVRA. It seeks to implement Rule 1001 through the installation of the Dust Control Measures.  State Parks has accepted the terms and conditions imposed by the California Coastal Commission in its issuance of the coastal development permit, including requirements that will result in the take of the plover and least tern, and in adverse modification to the plover's critical habitat. State Parks continues to have role in implementing the Dust Control Measures in a manner and in locations within Oceano Dunes SVRA that will result in the illegal take of the two bird species.

17.   Defendant Lisa Mangat is the Director of State Parks.  She is responsible for State Parks' actions, including the acceptance of the coastal development permit terms that will result in take of the two federally-protecetd bird species as a result of the implementation of the Dust Control Measures.  She is sued in her official capacity.

18.   Defendant Air District is and was the local governmental agency that created and adopted Rule 1001 concerning dust control for Oceano Dunes SVRA. The CCC approved and issued the coastal development permit

with conditions specifically designed to authorize compliance with Air District requirements, including Rule 1001, and the Air District will continue to direct, approve and/or disapprove State Parks' efforts to implement the Dust Control Measures through requirements imposed by the CCC in its coastal development permit, or through Rule 1001 or other Air District rules and associated enforcement actions against State Parks. The Air District's requirements, as implemented through the coastal development permit, and through enforcement actions, will compel placement and extensive coverage of the Dust Control Measures at Oceano Dunes SVRA in areas that will result in take of the western snowy plover and the California least tern, and adverse modification of designated critical habitat for the western snowy plover, in violation of § 9 of the ESA and federal regulations.

19.   Defendant Air District Board is the decision-making body for the Air District and is responsible for adopting rules and regulations regarding non-vehicular sources of pollution in San Luis Obispo County. The Air District Board is comprised of 12 members, five San Luis Obispo County Supervisors and one city council representative from each of the seven incorporated cities. It adopted Rule 1001 in late 2011. The Dust Control Measures implement Rule 1001, in whole or part. The CCC approved and issued the coastal development permit with conditions specifically designed to authorize compliance with Air District requirements, including Rule 1001, and the Air District will continue to direct, approve and/or disapprove State Parks' efforts to implement the Dust Control Measures through requirements imposed by the CCC in its coastal development permit, or through Rule 1001 or other Air District rules and associated enforcement actions against State Parks. The Air District's requirements, as implemented through the coastal development permit, and through enforcement actions,

will compel placement and extensive coverage of the Dust Control Measures at Oceano Dunes SVRA in areas that will result in take of the western snowy plover and the California least tern, and adverse modification of designated critical habitat for the western snowy plover, in violation of § 9 of the ESA and federal regulations.

20.   Defendant Gary Willey is the Air Pollution Control Officer for the Air District. He is being sued in his official capacity.  The CCC approved and issued the coastal development permit with conditions specifically designed to authorize compliance with Air District requirements, including Rule 1001, and the Air District, with Mr. Willey at the helm, will continue to direct, approve and/or disapprove State Parks' efforts to implement the Dust Control Measures through requirements imposed by the CCC in its coastal development permit, or through Rule 1001 or other Air District rules and associated enforcement actions against State Parks.  The Air District's requirements, as implemented through the coastal development permit, and through enforcement actions, will compel placement and extensive coverage of the Dust Control Measures at Oceano Dunes SVRA in areas that will result in take of the western snowy plover and the California least tern, and adverse modification of designated critical habitat for the western snowy plover, in violation of § 9 of the ESA and federal regulations.

21.   Debbie Arnold is the Chair of the Board of Directors of the Air District, which is the decision-making body for the Air District and is responsible for adopting rules and regulations regarding non-vehicular sources of pollution in San Luis Obispo County. She is being sued in her official capacity. The Air District Board is comprised of 12 members, five San Luis Obispo County Supervisors and one city council representative from each of the seven incorporated cities. It adopted Rule 1001 in late 2011. The

Dust Control Measures implement Rule 1001, in whole or part. The CCC
approved and issued the coastal development permit with conditions
specifically designed to authorize compliance with Air District requirements,
including Rule 1001, and the Air District will continue to direct, approve
and/or disapprove State Parks' efforts to implement the Dust Control
Measures through requirements imposed by the CCC in its coastal
development permit, or through Rule 1001 or other Air District rules and
associated enforcement actions against State Parks.  The Air District's
requirements, as implemented through the coastal development permit, and
through enforcement actions, will compel placement and extensive coverage
of the Dust Control Measures at Oceano Dunes SVRA in areas that will result
in take of the western snowy plover and the California least tern, and adverse
modification of designated critical habitat for the western snowy plover, in
violation of § 9 of the ESA and federal regulations.

22.  Defendant California State Air Resources Board ("CARB") is an 11-
member board established within the California Environmental Protection
Agency under California Health & Safety Code § 39510.  As articulated in the
CCC staff report for the coastal development permit at issue in this lawsuit,
CARB is engaged in a "collaborative" process with State Parks and the Air
District to implement the Dust Control Measures, and the CCC asserts that it
approved and issued the coastal development permit with conditions
specifically designed to authorize compliance with CARB requirements.
CARB will direct and/or approve the manner and location of the Dust
Control Measures within Oceano Dunes SVRA, as a result of computer
modeling designed to determine dust emission locations and otherwise, in
such a way that will result in take of the western snowy plover and the
California least tern, and adverse modification of designated critical habitat

for the western snowy plover, in violation of § 9 of the ESA and federal regulations.

23.  Defendant Mary Nichols is the Chair of the California State Air Resources Board ("CARB").  She is being sued in her official capacity. As articulated in the CCC staff report for the coastal development permit at issue in this lawsuit, CARB is engaged in a "collaborative" process with State Parks and the Air District to implement the Dust Control Measures, and the CCC asserts that it approved and issued the coastal development permit with conditions specifically designed to authorize compliance with CARB requirements.  CARB, under Ms. Nichols, will direct and/or approve the manner and location of the Dust Control Measures within Oceano Dunes SVRA, as a result of computer modeling designed to determine dust emission locations and otherwise, in such a way that will result in take of the western snowy plover and the California least tern, and adverse modification of designated critical habitat for the western snowy plover, in violation of § 9 of the ESA and federal regulations.

24.  Defendant County of San Luis Obispo ("SLO County") is a local governmental agency and subdivision of the State of California with the authority to regulate and administer land use and development within its territory, but only in compliance with state and federal law.  SLO County is a co-applicant with State Parks for the coastal development permit at issue in this action, and it owns a 584-acre area known as the "La Grande Tract" located within the SVRA and an area targeted for some of the Dust Control Measures.  The CCC has granted the permit, and SLO County has accepted the permit conditions.  Given its role as a co-applicant for the coastal development permit and acceptance of the offending conditions imposed by the CCC, and given its role in authorizing the placement and installation of

the Dust Control Measures at locations on property that it owns (the La Grande Tract) within Oceano Dunes SVRA, SLO County is named for its role in authorizing, allowing, and accepting the location and coverage of the Dust Control Measures in such a way that will result in take of the western snowy plover and the California least tern, and adverse modification of designated critical habitat for the western snowy plover, in violation of § 9 of the ESA and federal regulations.

25.  Defendant John Peshong is the Chair of the Board of Supervsiors for the County of San Luis Obispo ("SLO County").  He is being sued in his official capacity.  SLO County is a co-applicant with State Parks for the coastal development permit at issue in this action, and it owns a 584-acre area known as the "La Grande Tract" located within the SVRA and an area targeted for some of the Dust Control Measures. The CCC has granted the permit, and SLO County has accepted the permit conditions. Given its role as a co-applicant for the coastal development permit and acceptance and approval of the offending conditions imposed by the CCC, and given its role in authorizing the placement and installation of the Dust Control Measures at locations on property that it owns (the La Grande Tract) within Oceano Dunes SVRA, SLO County is named for its role in authorizing, allowing and accepting the location and coverage of the Dust Control Measures in such a way that will result in take of the western snowy plover and the California least tern, and adverse modification of designated critical habitat for the western snowy plover, in violation of § 9 of the ESA and federal regulations.

26.  Defendant City of Grover Beach (the "City") is an incorporated city located in San Luis Obispo County, California.  The City is a co-applicant with State Parks for the coastal development permit at issue in this action. The CCC has issued the coastal development permit and the City has

accepted and approved the conditions in the CCC coastal development permit that that will result in take of the western snowy plover and the California least tern, and adverse modification of designated critical habitat for the western snowy plover, in violation of § 9 of the ESA and federal regulations.

27.   Defendant John P. Shoals is the Mayor of the City of Grover Beach (the "City").  Under Mayor Shoals' direction, the City is a co-applicant with State Parks for the coastal development permit at issue in this action and it has accepted and approved the conditions in the CCC coastal development permit that that will result in take of the western snowy plover and the California least tern, and adverse modification of designated critical habitat for the western snowy plover, in violation of § 9 of the ESA and federal regulations.

28.   The true names and capacities of Defendants Does 1 through 10 are unknown to Plaintiffs who therefore sue these Defendants by such fictitious names.  Plaintiffs are informed and believe that each of Defendants Does 1 through 10 are responsible in some manner for the events herein described and the injuries suffered by Plaintiffs.  Plaintiffs will amend this Complaint to allege the identities of such Doe Defendants when the same have been ascertained.  Plaintiffs are further informed and believe that each of the Defendants named herein, including Does 1 through 10, was the agent, servant, employee, and/or alter ego of the other Defendants and, that in doing the things alleged herein, was acting within the scope to his/her/its actual or apparent authority.

29.   Each and all of the named Defendants are responsible for the violations of law set forth in this Complaint.

1
2
3
4

## STATUTORY BACKGROUND

5      30.  The Endangered Species Act of 1973 ("ESA"), 16 U.S.C. § 1531 *et*
6  *seq*. protects species and their natural ecosystems by prohibiting any
7  "person" from committing a "take" as to any endangered species. ESA §
8  9(a)(1)(B). "Take" means "to harass, harm, pursue, hunt, shoot, wound, kill,
9  trap, capture, or collect or to attempt to [do so]...." 16 U.S.C. § 1532(19).
10 Harm or harassment includes modifying or degrading a habitat. 50 C.F.R. §
11 17.3.  The governmental defendants named are "persons" under the ESA.  16
12 U.S.C. § 1532(13).

13     31.  Under the ESA, "any person may commence a civil suit on his own
14 behalf ... to enjoin ... the United States and any other governmental
15 instrumentality or agency (to the extent permitted by the eleventh
16 amendment to the Constitution), who is alleged to be in violation of any
17 provision of [the ESA]." 16 U.S.C. § 1540(g)(1)(A).  Plaintiffs Friends and
18 Knoff are persons under the ESA.

19
20 ## FACTUAL BACKGROUND

21     32.  In this case, Plaintiffs Friends and Knoff challenge the purported
22 authorization by governmental entities in California for certain Dust Control
23 Measures at Oceano Dunes SVRA in San Luis Obispo County on the basis
24 that the authorization will result in the take of two protected shorebird
25 species – the western snowy plover and the California least tern.

26     33.  The U.S. Fish and Wildlife Service declared the western snowy
27 plover as "threatened" in 1993, and subsequently designated critical habitat

28

for the bird.  The U.S. Fish and Wildlife Service also has declared the California least tern as "endangered."

34.  State Vehicular Recreation Areas, or SVRAs, are off-highway vehicle ("OHV") parks that are established and operated pursuant to state law by State Parks to provide managed OHV recreation opportunities and camping.  Pursuant to Cal. Pub. Res. Code § 5090.32(a), State Parks has the duty and responsibility for "[p]lanning, acquisition, development, conservation, and restoration of lands" in SVRAs, as well as "management, maintenance, administration, and operation of" those lands.  Cal. Pub. Res. Code §§ 5090.32(a), (b), and (d).  State Parks also must "prepare and implement management and wildlife habitat protection plans for lands in, or proposed to be included in, state vehicular recreation areas . . . ." *Id*., § 5090.32(g); and 5090.35(a), (b) and (c).

35.  Oceano Dunes SVRA is operated and managed by State Parks pursuant to Coastal Development Permit No. 4-82-300 issued by the CCC in 1982. Coastal Development Permit No. 4-82-300 does not authorize the activities that comprise the Dust Control Measures that are at issue in this lawsuit.  A large area, from approximately the shoreline to a distance up to 1,300 feet east and inland within Oceano Dunes SVRA is designated as critical habitat for the western snowy plover. Roughly that same area serves as occupied habitat for the California least tern.

36.  In late 2011, the Air District promulgated and adopted a regulation known as Rule 1001 to address certain dust emissions from Oceano Dunes SVRA. Litigation brought by Petitioner Friends resulted in the partial invalidation of Rule 1001.

37.  Beginning in 2012, State Parks began efforts to implement Rule 1001 dust monitoring and control measures through a dust control project/program.

38.  Pressed by Friends to stop relying on illegal maneuvers to avoid permits required by the California Coastal Commission, State Parks finally pursued a regular coastal development permit from the CCC for the Dust Control Measures.  SLO County joined State Parks in the coastal development permit application because it owns a 584-acre area known as the "La Grande Tract," which is located in the center of Oceano Dunes SVRA, and much of the dust control measures will be installed on the La Grande Tract, and the County's authorization was required.  The City of Grover Beach also joined State Parks in the permit application because part of the Dust Control Measures will be installed within the City's jurisdiction, and thus the City's authorization was required.

39.  State Parks' application to the CCC for a coastal development permit defined the "dust control measures" to include: (a) planting approximately 20 acres of vegetation per year for a total of 100 acres over a five-year period; (b) installing an additional 40 acres of seasonal dust control measures, including dense wind fencing, straw bales, metal mesh ground cover, and large orange boxes (as well as additional unidentified measures) from March 1 to September 30 each year (which coincides exactly with the breeding and nesting season for the western snowy plover and California least tern); (c)  possibly planting scores of acres of trees on the eastern edge of Oceano Dunes SVRA; (d) installing, maintaining, and operating monitoring equipment; and (e) installing, operating, and maintaining grooved concrete at Pismo State Beach exits on Grand Avenue in the City of Grover Beach and Pier Avenue in the City of Oceano, California.

40.  However, on September 1, 2017 – years after State Parks submitted its application to the CCC – the CCC staff unilaterally enlarged the scope of the coastal development permit authorization.  The CCC staff recommended for the first time that the coastal development permit authorize a vastly expanded version of the Dust Control Measures. Specifically, the CCC staff proposed changing the permit by massively expanding the Dust Control Measures in the following ways: (a) eliminating the setback and exclusions in the Dust Control Measure project area that State Parks had imposed expressly to avoid take of sensitive species, including the western snowy plover and California least tern, and adverse impacts to that birds' habitat (i.e., expanding the project area in an open-ended manner that will be determined entirely by dust emissivity predicted by CARB's computer model and the Air District's direction, regardless of impacts to sensitive species or other resources); (b) removing any limitation on the amount of acreage of vegetation (or seasonal measures such as wind fencing), i.e., eliminating the cap on annual acreage (20 acres of vegetation and 40 acres of seasonal measures), and dispensing with the total acreage cap of 100 acres over five years, allowing for unlimited acreage if deemed "necessary" under CARB computer modeling; and (c) allowing the dust control measures to be installed closer to the shore and within foredunes even though those areas are deemed sensitive habitat.  (State Parks' dust control measures, as modified by the CCC, are referred to as the "Dust Control Measures.")

41.  The CCC staff report for the coastal development permit application described these changes as a "slight" modification to State Parks' application, even though the changes expanded the authorization of the Dust Control Measures to as much as 3,500 acres of Oceano Dunes SVRA rather

than the roughly 100 acres that State Parks proposed.  The CCC also purported to authorize and expand the Dust Control Procedures into areas currently designated by the CCC and SLO County as "environmentally senstive habitat areas," or "ESHA," under the Coastal Act.  Cal. Pub. Res. Code § 30240.  Cal. Pub. Res. Code § 30107.5 defines ESHA as "any area in which plant or animal life or their habitat are either rare or especially valuable because of their special nature or role in an ecosystem and which could be easily disturbed or degraded by human activities and developments."  So, while State Parks crafted a proposal to achieve dust emission reductions, while at the same time avoiding take of the western snowy plover and California least tern, or adverse modification of the birds' critical, sensitive and occupied habitat, the CCC threw out these environmental, species and coastal resource protections, and instead authorized the Dust Control Measures to be placed literally anywhere in Oceano Dunes SVRA, with no limitations on the amount or location of dust control measures so long as the CARB computer modeling determined that its placement was "necessary."

42.  The CCC failed to include any new mitigation to address the expanded impacts to the protected shorebirds, or their habitat.  The CCC also ignored express findings in State Parks' Environmental Impact Report for the Dust Control Measures that expanding the measures in such a way would result in significant additional environmental impacts, including impacts to the birds and their habitat.  The CCC issued a 159-page staff report that recommended that the permit authorize this expanded version of the dust control program, and allowed the public four business days to submit written comments.  After issuance of the September 1, 2017 CCC staff report, Friends submitted a series of letters commenting on, and objecting

1   to, the coastal development permit, as modified by the CCC.  On September

2   6, 2017, Friends also formally requested a continuance of the CCC hearing in

3   light of the CCC's last-minute substantial changes to the project, and the

4   severely limited time that the CCC allowed for public comment.  The CCC

5   denied the request for continuance.

6        43.  The night before the CCC hearing on the permit application, on

7   September 13, 2017, sometime after 7:30 p.m., and without any specific

8   notice to Friends, the CCC staff placed a staff report addendum on its

9   website, which made further changes to the permit and permit conditions.

10  The next morning, on September 14, 2017, Friends again submitted

11  comments and objections.  Friends was severely hampered and unduly

12  prejudiced by the extremely limited amount of time to comment on the staff

13  report and the staff report addendum, which was the intent of CCC staff.

14       44.  On October 3, 2017, Plaintiffs, delivered a 60-day notice of intent

15  to sue under the 16 U.S.C. § 1540(g) to the governmental defendants named

16  herein, and to the Secretary of the Interior, for violations of § 9 of the ESA

17  for authorizing through a coastal development permit the Dust Control

18  Measures that will result in the take of the federally-threatened western

19  snowy plover and the federally-endangered California least tern, and for

20  installation of those measures.

21       45.  Years of environmental study demonstrate that the Dust Control

22  Measures will result in take of the western snowy plover and the California

23  least tern.

24       46.  In December 2012, State Parks issued a Notice of Preparation for

25  an Environmental Impact Report for the Dust Control Measures.  State

26  Parks decided the law required it to undertake a full-blown Environmental

27  Impact Report ("EIR") because the agency's November 2012 Initial Study

28

concluded that the Dust Control Measures could have a potentially significant adverse impact on a range of coastal resources, including, but not limited to, sensitive plant and animal species and land use.  Specifically, the Initial Study concluded that the Dust Control Measures might impact the western snowy plover and the California least tern.

47.  On February 6, 2015, State Parks issued a Revised Notice of Preparation for an Environmental Impact Report ("EIR") for the Dust Control Measures. One of the main purposes of the Revised Notice was to adjust the project area boundary in order to ensure that the project would avoid officially designated critical habitat for the western snowy plover, as well as occupied habitat for the California least tern.

48.  In August 2016, State Parks released a draft EIR for the Dust Control Measures, and in March 2017, State Parks issued the Final EIR.

49.  State Parks' EIR, which evaluated a small 100 acre dust control program being proposed by State Parks, admitted that some of the activities of the Dust Control Program "may occur in the vicinity of" the western snowy plover. Vegetation or seasonal dust control measures could be installed anywhere within the 690-acre dust program area, which immediately borders snowy plover critical habitat designated by the U.S. Fish and Wildlife Service.  Importantly, the EIR also concluded that an alternative, expanded dust control program suggested by the Air District would place dust control measures *within* snowy plover critical habitat, and *within* occupied California least tern habitat.  In its draft EIR, State Parks considered the Air District's recommendation to (a) expand the project area to include all off-highway vehicle ("OHV") recreation lands; (b) emphasize vegetation island placement closer to the shoreline and foredunes; and (3) increase the amount of wind fencing by 20 percent per year (resulting in a

doubling of the covered acreage to 83 acres).  State Parks' EIR concluded

that this expansion would result in significant additional, adverse biological,

recreational, visual and aesthetic impacts. State Parks specifically concluded

that the expanded alternative would result in the adverse modification of

designated critical habitat for the western snowy plover, and possible take of

the plover and tern.  Specifically, State Parks' EIR concluded that the

expanded alternative "could result in new, potentially significant or

significant and unavoidable impacts on aesthetics and/or biological

resources. The alternate dust control program could more than double the

amount of wind fencing installed in Year 5 (83 acres versus 40 acres) if the

Rule 1001 performance standard is not met, which would increase the

visibility of the fencing array from all receptor vantage points. The alternate

dust control program could also result in direct and/or indirect impacts on

biological resources because the emphasis on planting vegetation in

nearshore areas would likely modify, to some degree, USFWS designated

critical habitat for the western snowy plover (federal-listed as threatened).

Planting vegetation in this critical habitat area could impact active nests by

providing habitat for predators to hide and stalk nesting western snowy

plovers and California least terns (federal- and state-listed as threatened)."

Plaintiff Friends had submitted detailed biological reports, data and analysis

to State Parks showing that the new vegetation islands being planned as a

dust control measure would act as cover for coyotes, red fox and other

predators of the plover and tern, and would increase predation reulting in

take of the protected birds.

50.  State Parks' EIR establishes a number of thresholds of significance

for biological resources, including a finding of significance if the dust control

program would "have a substantial adverse effect, either directly or through

habitat modifications, on any species identified as a candidate, sensitive, or special-status species in local or regional plans, policies, or regulations, or by CDFW or USFWS." The EIR concluded that the "Dust Control Program activities . . . have the potential to result in direct and indirect effects on special-status plant species and their habitat." The EIR also finds that the "Dust Control Program activities would have the potential to result in direct and indirect effects on special-status wildlife species and their habitat." The EIR continues: "Direct effects could include habitat loss and harassing, harming, and/or inadvertent trapping, wounding, or killing special-status wildlife species during work activities (including project access). Indirect effects could include habitat alteration or loss (i.e., changing existing habitat to a different type of habitat), increased predation of special-status species, and interference with or loss of reproductive interest and/or success. The EIR also notes: "Currently, western snowy plover and California least tern breed primarily breed directly west of the Program area. It is possible western snowy plover and California least tern, would be encountered in the western part of the Program area. Although unlikely, western snowy plovers could possibly be encountered throughout the Program area during foraging and wintering activities. Given their listed status, impacts to California red-legged frog, western snowy plover, and California least-tern would likely be of the greatest magnitude; however, all impacts to special-status wildlife species and their habitat could be potentially significant."

51. State Parks suggested certain mitigation measures it thought would mitigate for impacts to these biological resources. Friends contends that those measures would be inadequate to mitigate significant impacts to those biological resources. However, even State Parks agreed that an expanded Dust Control Program like that suggested by the Air District would

result in significant environmental and coastal resource impacts.  The EIR concluded that expanded Dust Control Measures would result in greater and significant impacts to biological resources: ". . . this alternative could result in new, potentially significant or significant and unavoidable impacts on aesthetics and/or biological resources."  Based on these findings, State Parks did not develop any mitigation that it thought would address the significantly greater impacts that an expanded Dust Control Program would cause. Rather, it concluded that the expanded Dust Control Measures should not be implemented because there would be unacceptable environmental and coastal resource impacts.

52.  In approving the coastal development permit for the Dust Control Measures, the CCC not only ignored and discounted all of State Parks' analysis and findings, it doubled-down.  The CCC expanded the Dust Control Measures beyond the expanded alternative that State Parks studied in its EIR.  The CCC expanded authorization for placement of the Dust Control Measures so they can be placed anywhere and everywhere within the 3,500 SVRA so long as CARB computer modeling identifies significant dust emissions.  Rather than merely authorizing an additional 100 acres (the alternative that it and State Parks evaluated in part), the CCC authorized a 3,500-acre expansion.  It did so without the slightest environmental or coastal resource impact analysis.  The CCC undertook a faux analysis of an additional 100-acre expansion but there was no lawful basis for limiting the analysis to 100-acres when the new authorization expanded permit authority to an additional 3,400 acres.  It failed to study or include any mitigation measures to address the vast expansion of Dust Control Measures to anywhere and everywhere within the 3,500-acre SVRA, including plover critical habitat, occupied least tern habitat, and occupied thistle critical

habitat.  The CCC added no additional mitigation to protect and conserve the plover and least tern, and authorized the Dust Control Measures in plover critical habitat and in least tern occupied habitat even during nesting and breeding season, when take would be certain.  The CCC also mandated that each year State Parks demonstrate to the CCC that it implemented the Dust Control Measures at the locations and in the acreage desired by the Air District and CARB.  There is no limitation in the permit allowing State Parks to avoid plover or tern habitat or to ensure that take will not occur as a result of the vast expansion of the Dust Control Measures.

53.  Despite the fact that the biological mitigation measures proposed in State Parks' EIR were intended to address the impacts resulting from the smaller 100-acre dust control proposal submitted by State Parks, the CCC, as part of its coastal development permit approval, adopted the EIR mitigation measures without any modification or any meaningful study as to whether they would address biological impacts resulting from a Dust Control Program that is authorized to be 35 times larger.  These measures were inadequate to address the impacts from a 100-acre Dust Control Program, and thus, under no circumstance, would they be adequate to address the biological impacts of a program 35 times larger. Below, illustative examples of these shortcomings are described. References to the EIR mitigation should be read as a CCC mitigation also since the CCC adopted these same mitigation measures without change.

54.  As a biological mitigation measure, State Parks' EIR provides that "[n]o more than three days prior to starting work in the vicinity of western snowy plover and California least tern habitat from March 1st to September 30th, a qualified biologist shall survey for western snowy plover and California least tern nests. If nests are found during this survey, [State

Parks] shall establish a minimum 300-foot buffer zone around the nest."
This mitigation measure is inadequate because it is reasonable to assume
that during nesting season, a snowy plover or least tern may nest in the
expanded Dust Control Program area during the 3-day gap between the
species survey and the work activities since the activity may well be in critical
habitat.  The CCC fails to evaluate the heightened risk of take during this gap
period. In addition, the mitigation is internally inconsistent. In the core
discussion of plover mitigation, State Parks states that surveys will be
performed "no more than seven (7) days prior to the start of work." Thus, it
is unclear whether the mitigation requires no more than a 3-day gap or no
more than a 7-day gap. Seven days provides an even greater window to allow
plovers to nest in the work area without detection, and, as a result,
substantially increases the risk of take.  The CCC adopted these measures
without comment, and without addressing their application to 3,500 acres,
rather than 100 or 200 acres, which makes take of the plover or least tern
likely as the Dust Control Measures are implemented.

55. As a biological mitigation measure, State Parks' EIR provides that
if nesting activity is initiated within 300 feet of in-progress or installed dust
control activities, State Parks will stop all active work and install additional
fencing. It also says that no additional dust control activities shall be
performed within 300 feet of such exclosure until after the nest fate is
determined.  However, the EIR fails to include any mitigation measures to
ascertain whether the additional fencing and buffer achieves the objective of
no take of the snowy plover or least tern. Under federal law, "take" including
interference with breeding activities resulting in death. Since work activities
will be allowed to commence after the fence is installed, the work activity
could still interfere with plover or tern breeding activity during breeding

1  season even with a 300-foot buffer, especially under the expanded Dust

2  Control Measures which are now allowed even within critical habitat. The

3  CCC adopted these measures without comment, and without addressing

4  their application to 3,500 acres, rather than 100 or 200 acres.  Therefore, the

5  mitigation measure (adopted by the CCC) is inadequate, and will result in

6  take of the plover and tern.

7      56. As a biological mitigation measure, State Parks' EIR provides that

8  "[a] biological monitor shall be available to monitor for the presence of

9  nesting activity throughout the installation of all dust control measures.  The

10  on-site biological monitor shall have the authority to halt any action that

11  might result in impacts to individual birds or nests. If work is stopped, the

12  USFWS shall be notified immediately by the on-site biological monitor."

13  This mitigation measure, adopted by the CCC, is inadequate in several

14  respects.  The measure simply states that the biological monitor will "be

15  available," not that he or she will actually monitor nests near the work

16  activities.  Also, while the EIR states that the biological has the "authority" to

17  halt activity, it does not require the biologist to halt the activity. Thus, the

18  activity could continue and result in a take of the snowy plover or least tern.

19  The mitigation measure is inadequate and the CCC failed to consider the

20  heightened risk of take as a result of this deficiency.  Worse yet, the EIR

21  leaves open the possibility that "regular monitoring of active nests by a

22  qualified biologist" may not be "feasible."  Yet, the CCC provides no

23  alternative mitigation measure.  The CCC adopted these measures without

24  comment, and without addressing their application to 3,500 acres, rather

25  than 100 or 200 acres, which will result in take of the plover and tern.

26      57. As another biological mitigation measure, State Parks' EIR

27  provides that "[p]rogram activities that could facilitate predator movement

28

into known or potential nesting areas for plover and tern shall be minimized." Friends' biologist alerted State Parks that adding 100 acres (or more) of new vegetation provides perfect cover for bird predators such as red foxes and coyotes.  The CCC rejected this concern without any studies or data, and without substantial evidence, and worsened the risk by vastly expanding the authorization to plant such vegetation over the entire 3,500-acre SVRA.  Hundreds or even thousands of acres of vegetation would clearly provide cover for predators pursuing plover and plover nests.  The CCC permit now even allows this within plover critical habitat during the nesting and breeding season, which makes take of the plover and tern likely.

58.  Also, the mitigation measure of preconstruction surveys is inadequate as a matter of law because the EIR fails to define and specify what additional actions the biologist must take other than setting up buffer areas around nests. There is no requirement that the buffer areas must insure no take of protected bird species, and there is no required action if the buffer areas fail to protect the plover and tern nests other than consulting the U.S. Fish and Wildlife Service and/or the California Department of Fish and Wildlife "for additional avoidance and minimization measures," which are not listed or specified. The EIR even admits that active and on-going surveys and monitoring may not be "feasible," but then fails to identify any additional mitigation measures that would apply to listed and protected bird species such as the plover and tern.  The CCC adopted these measures without comment, and without addressing their application to 3,500 acres, rather than 100 or 200 acres, which makes take of the plover and tern likely.

59.  Finally, the EIR includes revised biological mitigation measures such as the removal and/or relocation of any specific structures found to contribute to California least tern and western snowy plover predation. The

problem with this mitigation approach is that by definition it waits until there has been an actual take of a California least tern or western snowy plover before it requires action to protect the species from further take.  It demonstrates on its face that the Dust Control Program does not prohibit all take of the California least tern and western snowy plover.

60.  The CCC approved the coastal development permit for the Dust Control Measures on September 14, 2017 even though State Parks is presently working with the U.S. Fish and Wildlife Service to prepare a habitat conservation plan to address all operations at Oceano Dunes SVRA, including the Dust Control Measures.  That process may result in additional mitigation measures to protect the plover and least tern, and their habitat, and may result in the Fish and Wildlife Service issuing an incidental take permit pursuant to § 10 of the ESA. Immediately prior to the September 14, 2017 public hearing on the coastal development permit, a sitting U.S. Congressman advised the CCC in writing that he had been in contact with the Department of Interior and had confirmed that the Fish and Wildlife Service would be evaluating – as part of the habitat conservation plan review process – whether the expanded vegetation islands that constitute the bulk of the Dust Control Measures would cause take of the plover and tern.  On that basis, he asked the CCC to continue the hearing and issuance of the coastal development permit in order to allow the expert agency to evaluate the matter.  The CCC completely ignored the request and approved the permit without any additional mitigation or avoidance requirements, which is arbitrary and capricious, and which will result in take of plover and least tern, and adverse modification of critical habitat.

61.  No agency, including the CCC, has obtained any type of incidental take permit from any state or federal agency for take of the California least

tern or western snowy plover that will result from the Dust Control Measures at Oceano Dunes SVRA.  As described herein, take of the plover and least tern will occur at Oceano Dunes SVRA as a result of the Dust Control Measures.  Vast vegetation areas will be installed in, adjacent to or near plover critical habitat and occupied tern habitat at the SVRA, providing perfect cover for predators of plover and least tern, and biological opinions find that such take will occur, especially in light of the vast expansion of the Dust Control Measures authorized by the CCC in its granting of the coastal development permit to State Parks and Parks' co-applicants.  Seasonal dust control measures will provide perches for avian predators, and also will result in take of the least tern.

## FIRST CLAIM FOR RELIEF

### For Violation of Section 9 of the Endangered Species Act

(Against All Defendants)

62.  Plaintiffs hereby incorporate by reference paragraphs 1 through 61 as if set forth herein.

63.  The ESA, 16 U.S.C. § 1531 *et seq*. protects species and their natural ecosystems by prohibiting any "person" from committing a "take" as to any endangered species. ESA § 9(a)(1)(B). "Take" means "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect or to attempt to [do so]...." 16 U.S.C. § 1532(19). Harm or harassment includes modifying or degrading a habitat. 50 C.F.R. § 17.3.  The governmental defendants named are "persons" under the ESA.  16 U.S.C. § 1532(13).

64.  Government agencies charged or tasked with land or resource management (including governmental authorization, approval, mandate or direction to third parties) engage in a take in violation of the ESA both by

conduct and the failure to act that results in harm and/or killing of a listed species, or significant impairment of habitat or breeding patterns. A government violates the ESA's take prohibition when that governmental official authorizes someone to enage in activity that causes a taking of an endangered or threatened species. Taking may also occur as a result of adverse modification of critical habitat.

65. As described herein, at Oceano Dunes SVRA, government entities either responsible for land management or resource management are authorizing, mandating or implementing approvals and actions that will result in the take of the protected western snowy plover and California least tern species through increased bird predation caused by the Dust Control Measures (or the take is reasonably foreseeable in light of the biological opinions of Dr. Rob Roy Ramey, State Parks' findings, the history of predation activities at Oceano Dunes SVRA and in the area, and scientific articles and studies linking vegetation cover, proximity and increased predation). Defendants are also causing adverse modification of plover critical habitat by adding large vegetation islands that provide cover for predators which in turn will kill and harm plover.

66. While predation of plover and tern in this area of the California coast has been a historical problem, the actions by the governmental entities in this case in approving, authorizing and implementing the Dust Control Measures, will cause a great increase in that take of the plover and least tern.

67. State Parks (and Lisa Mangat, as the Director of State Parks in her official capacity), as the land manager of Oceano Dunes SVRA, and the CCC (and Jack Ainsworth as the CCC Executive Director in his official capacity) as the regulatory agency, have long been aware of the problem of predation at Oceano Dunes SVRA. Here, the CCC's approval, express authorization and

issuance of the coastal development permit for the Dust Control Measures at Oceano Dunes SVRA, and State Parks' implementation of those measures (either voluntarily, or as a result of mandates by the Air District or CARB, or a as a result of a combination of voluntary measures and mandated measures) will exacerbate and cause, directly and indirectly, predation and increased predation of plover and tern at Oceano Dunes SVRA, in violation of § 9 of the ESA.

68.  The Air District, the Air District Board, Gary Willey (as the Air Pollution Control Officer in his official capacity), and Debbie Arnold as the Chair of the Air Board in her official capacity, are also violating § 9 of the ESA by mandating that State Parks install the Dust Control Measures, and specifically, that State Parks (1) install the Dust Control Measures outside the initial Program boundary area and elsewhere in the SVRA including in or adjacent to plover critical habitat and tern occupied habitat if those areas are determined to be a "highly emissive" dust area by the Air District or CARB; (2) increase substantiallly the acreage of Dust Control Measures, both seasonal and permanent, including including in or adjacent to plover critical habitat or occupied habitat for the least tern if those areas are determined to be a "highly emissive" dust area by the Air District or CARB; and (3) increase substantially the acreage of Dust Control Measures within open sand riding areas which substantially increases the cover for predators of the plover and least tern when compared to the present situation, and includes areas in or adjacent to plover critical habitat and tern occupied habitat.  These mandates and directives substantially will increase take of the plover and least tern in violation of § 9 of the ESA.

69.  CARB (and Mary Nichols in her official capacity as the Chair) also is violating the ESA by mandating, directing, and/or recommending as part

of an overall ad hoc regulatory scheme, agreement or understanding with State Parks, the Air District, the Air District Board, and the CCC, that the Dust Control Measures be implemented in areas, and to such an extent, as deemed warranted by CARB computer modeling or by other means (which have not been made public), where such areas include plover critical habitat and tern occupied habitat, or areas adjacent to said habitat, resulting in take of the species through increased predation in violation of § 9 of the ESA.

70.  SLO County (and John Peshong in his official capacity as Chair of the Board of Supervisors) also is violating the ESA by virtue of its co-application with State Parks for a coastal development permit to the CCC, its acceptance of the permit conditions, including the vast expansion of the Dust Control Measures as described herein, and its express or implied authorization to implement the expanded Dust Control Measures on its land or within its jurisdiction including the La Grande Tract, on, near or adjacent to plover critical habitat or tern occupied habitat, resulting in increased predation and take of the tern in violation of § 9 of the ESA.

71.  The City of Grover Beach (and Mayor Shoals in his official capacity) also is violating the ESA by virtue of its co-application with State Parks for a coastal development permit to the CCC, its acceptance of the permit conditions, including the vast expansion of the Dust Control Measures as described herein, and its express or implied authorization to implement the expanded Dust Control Measures on its land or within its jurisdiction, on, near or adjacent to plover critical habitat or tern occupied habitat, resulting in increased predation and take of the tern in violation of § 9 of the ESA.

72.  State Parks' proposed to plant 100 acres of new vegetation in large sections.  The CCC expanded this proposal massively, authorizing the

placement of these dust control measures anywhere and everywhere in the 3,500 acre SVRA, including in plover critical habitat and occupied least tern habitat during the breeding season, so long as it is deemed necessary by CARB's computer modeling or the Air District's directives.  Biologists, numerous scientific studies, articles and papers, as well as State Parks itself (in its environmental studies) concluded that adding large vegetation areas at the SVRA will provide perfect cover for a range of predators of the tern, causing an increase in predation and significant impairment of breeding patterns.  Each of the named governmental entities is complicit in this expansion in the violation of the ESA.

73.  Thus, the CCC's over-expanded permit authorization, and State Parks' commitment to implement the permitted project and acceptance of the permit conditions, will directly and indirectly result in take of plover and terns, as well as adverse modification of plover critical habitat.  Likewise, the Air District's and Air District Board's  actions, including enforcement of Rule 1001 and other District nuisance abatement rules, to compel State Parks to place the expanded dust control measures at locations near, adjacent or within occupied tern habitat also make the Air District, its Board and governmental officials liable for take of plover and tern stemming from this project, and in locations that ensure take will occur.  CARB is in a similar liability stance given that CARB computer modeling will dictate where the Dust Control Measures are placed, including in plover critical habitat and occupied tern habitat, and the extent and scope of the measures.

74.  The CCC's, State Parks', the Air District's, the Air District Board's, CARB's, SLO County's and the City's violation of ESA is contrary to law, exceeds their authority, is arbitrary and capricious, constitutes a prejudicial abuse of discretion and is not supported by substantial evidence or data, or

1 | in some cases any evidence or data.Plaintiffs are entitled to the relief
2 | requested in the Prayer section below.

3 |

4 | ### **PRAYER FOR RELIEF**

5 | WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil
6 | Procedure and 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights
7 | or legal relations of any party in any case involving an actual controversy.  An
8 | actual controversy has arisen and now exists between Plaintiffs and
9 | Defendants, in that Plaintiff contends that Defendants' Dust Control
10 | Measures violate Section 9 of the ESA and threaten take of two federally
11 | protected bird species. Defendants dispute Plaintiffs' contention. Plaintiffs,
12 | therefore, requests and are entitled to a judicial determination as to the
13 | rights and obligations under the ESA.

14 | WHEREFORE, Plaintiffs Friends, for itself and for its members, and
15 | William Knoff, as a member of Friends and individually, respectfully request
16 | that this Court enter judgment providing the following relief:

17 | (1)   Declaring that Defendants are violating, the ESA and
18 | associated FWS regulations and policies by taking listed species, including
19 | the western snowy plover and California least tern, without an incidental
20 | take permit in violation of § 9 of the ESA;

21 | (2)   Enjoining, temporarily, preliminarily and permanently,
22 | Defendants from continuing to authorize, approve, mandate, or direct the
23 | Dust Control Measures which cause take of listed species, including the
24 | western snowy plover and California least tern;

25 | (3)   Awarding Plaintiffs their costs and reasonable attorneys'
26 | fees in this action, as permitted by law; and

27 |

28 |

1        (4)   Granting Plaintiffs such other and further relief as this Court

2   deems to be just, proper and equitable.

3

4        Dated: December 4, 2017

5

6                                  Respectfully submitted,

7

8                                  /s/_Thomas D. Roth

9                                  Thomas D. Roth
                                   Law Offices of Thomas D. Roth
10                                 One Market, Spear Tower, Suite 3600
                                   San Francisco, California 94105
                                   (415) 293-7684
11
                                   Attorneys for Plaintiffs
12                                 Friends of Oceano Dunes, Inc. and
                                   William Knoff, as a member of Friends
13                                 and individually

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28