# United States District Court Central District of California




Friends of Oceano Dunes, et al.

Plaintiffs,

v.

John Ainsworth, et al.

Defendants.

LACV 17-8733-VAP (MRWx)

**Order Denying APCD Defendants' Motion to Dismiss and State Defendants' Motion to Dismiss and Granting State Defendants' Motion to Issue Stay**

**(Doc. Nos. 33 & 40.)**

Plaintiffs Friends of Oceano Dunes, Inc. and William D. Knoff ("Plaintiffs") filed this suit on December 4, 2017, alleging violations of section 9 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531-1544, against Defendants John ("Jack") Ainsworth, in his official capacity as Executive Director of the California Coastal Commission ("CCC"); Lisa Mangat, in her official capacity as the Director of the California Department of Parks and Recreation ("State Parks"); the San Luis Obispo County Air Pollution Control District and its Board of Directors (collectively, "APCD"); Gary Willey, in his official capacity as Air Pollution Control Director of the APCD; Debbie Arnold, in her official capacity as chair of the APCD Board of Directors; Mary Nichols, in her official capacity as the Chair of the California State Air Resources Board ("CARB"); the County of San Luis Obispo, California ("SLO County"); John Peschong, in his official capacity as Chair of the SLO County Board of Supervisors; the City of Grover Beach

("Grover Beach"); John P. Shoals, in his official capacity as Mayor of the City; and Does 1-10 (collectively, "Defendants").[1] (Doc. No. 1 ("Compl.").)

Defendants SLO County and Peschong ("County Defendants") filed an Answer on January 4, 2018. (Doc. No. 30.) Defendants Grover Beach and Shoals ("City Defendants") filed an Answer on January 5, 2018. (Doc. No. 31.)

On January 5, 2018, Defendants APCD, Willey, and Arnold ("APCD Defendants") filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule[2] of Civil Procedure 12(b)(6). (Doc. No. 33.) On January 16, 2018, Defendants Ainsworth and Mangat ("State Defendants") filed a Motion to Dismiss, or in the Alternative, Issue a Stay, pursuant to Rule 12(b)(6). (Doc. No. 40.) On February 12, 2018, Defendant Nichols filed a joinder in the Motion filed by Defendants Ainsworth and Mangat. (Doc. No. 57.)

Plaintiffs filed their Opposition to APCD Defendants' Motion on January 12, 2019 (Doc. No. 39) and their Opposition to State Defendants' Motion on February 5, 2018 (Doc. No. 53). APCD Defendants filed their Reply on January 22, 2018 (Doc. No. 48) and State Defendants filed their Reply on February 12, 2018 (Doc. No. 55).

---

[1] Plaintiffs filed a Notice of Dismissal pursuant to Federal Rule of Civil Procedure 41(a) as to Defendants California Coastal Commission, California Department of Parks and Recreation, and California Air Resources Board. (Doc. No. 53.)

[2] All further references to any "Rule" are to the Federal Rules of Civil Procedure.

After considering all papers filed in support of and in opposition to APCD Defendants' and State Defendants' Motions, and the arguments of counsel at the hearing on March 5, 2018 (see Doc. No. 61), the Court rules as follows.

## I. BACKGROUND[3]

The Oceano Dunes State Vehicular Recreation Area ("SVRA") is a state park located in San Luis Obispo County, California. (Compl. ¶ 6.) The SVRA is operated and managed by State Parks pursuant to Coastal Development Permit No. 4-82-300 issued by the CCC in 1982. (Id. ¶ 35.) A large area within the SVRA has been designated as a critical habitat for two federally-protected bird species: the western snowy plover and the California least tern. (Id.) The western snowy plover is protected under only federal law and not California law. (See id. ¶ 49.)

---

[3] The Court has reviewed and considered the Request for Judicial Notice filed in connection with APCD Defendants' Motion (Doc. Nos. 33-1, 33-2), the Request for Judicial Notice filed in connection with State Defendants' Motion (Doc. No. 41-1) and State Defendants' Objections to the Declarations of Jim Suty and Thomas Roth (Doc. No. 56). The Court GRANTS the Requests for Judicial Notice insofar as they pertain to Case No. 17-CV-0576, filed in San Luis Obispo County Superior Court on October 23, 2017 ("the State Court Action"), as the Court "may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." United States v. Black, 482 F.3d 1035, 1041 (9th Cir. 2007) (emphasis added). The Court GRANTS IN PART the Requests for Judicial Notice insofar as they pertain to other lawsuits Plaintiffs filed in state court, but in light of Plaintiffs' contention that "all but one are stayed, resolved or dismissed," and that neither party has provided any admissible evidence as to the status of these other state court actions, the Court takes notice only of the fact that Plaintiffs filed these three state court actions, but gives no weight to State Defendants' contention in their papers that these other cases are "pending." See Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001). The Court SUSTAINS State Defendants' Objections, as the declarations of Suty and Thomas "constitute evidence not referenced in the complaint" and improper for judicial notice." See Gerritsen v. Warner Bros. Entertainment Inc., 112 F. Supp. 3d 1011, 1020-21 (C.D. Cal. 2015).

In late 2011, the APCD promulgated and adopted a regulation known as Rule 1001 to address certain dust emissions from the SVRA ("the Dust Control Measures"), which involve "hundreds of acres of dust emissions and control measures and mechanisms at Oceano Dunes SVRA." (Id. ¶¶ 8, 36.) Beginning in 2012, State Parks began to implement the Dust Control Measures. (Id. ¶ 37.) State Parks initially did not apply for a coastal development permit ("CDP") from the CCC. (Id. ¶ 8.) Under the California Coastal Act, a CDP is required for development within the coastal zone and the CCC has jurisdiction to process applications and issue CDPs. (Id. ¶ 14.)

Between March 2016 and May 2017, Plaintiffs initiated three legal actions in state court seeking to block the implementation of the Dust Control Measures. (Id. ¶ 8; Doc. No. 41-1, Exs. 1, 2, and 4.)

On September 1, 2017, the CCC enlarged the scope of the State Parks' CDP application and "unilaterally expanded authorization to install the Dust Control Measures by dispensing with many of the mitigation measures that State Parks had proposed. This vast expansion allows the Dust Control Measures to cover up to 3,500 acres, rather than the originally proposed 100 acres, and to be implemented within currently designated critical habitat [sic] for the federally-protected western snowy plover, even during the nesting and breeding season." (Id. ¶¶ 8, 40.) Plaintiffs attempted to challenge the CCC's permit by submitting letters objecting to the scope of the CDP. (Id. ¶¶ 42-44.) On September 14, 2017, the CCC approved the CDP for the Dust Control Measures. (Id. ¶ 60.) On October 11, 2017, the CCC purported to adopt its initial approval of the CDP, and issued the CDP to State Parks, SLO County, and the City on or about September 20, 2017. (Id. ¶ 14.)

On October 23, 2017, Plaintiffs filed suit in San Luis Obispo County Superior Court, challenging the CCC's September 14, 2017 decision. (Doc. No. 41-1, Ex. 3.)

On December 4, 2017, Plaintiffs filed the Complaint in this case, alleging that the CCC's September 14, 2017 decision will result in a "take" of the western snowy plover and California least tern, in violation of section 9 of the ESA. (Doc. No. 1.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Bell Atl. Corp. v Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005). "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court." Schwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

## III. DISCUSSION

### A. Local Rule 7-3

Local Rule 7-3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution," and that the conference take place at least seven days prior to the filing of the motion. C.D. Cal. L.R. 7-3.

In their Opposition to APCD Defendants' Motion, Plaintiffs contend that the Court should deny APCD Defendants' Motion, which was filed on January 5, 2018, because APCD Defendants failed to comply with Local Rule 7-3. (Doc. No. 39 at 6-8.) Plaintiffs filed the declaration of Thomas D. Roth ("Roth Decl."), Doc. No. 39-1, in support of their argument. In his declaration, Mr. Roth asserts that APCD Defendants failed to contact him for a meet and confer seven days before the motion to dismiss filing deadline. (Roth Decl. ¶ 4.) Roth states that APCD Defendants' counsel Michelle Gearheart contacted him by email on the afternoon of January 4, 2018, requesting an extension to the deadline and

"attempted to invite herself to a meet and confer with other defendants scheduled for January 8, 2018." (Id. ¶ 6.)

In response, APCD Defendants argue that Plaintiffs have mischaracterized their efforts to meet and confer. (Doc. No. 48 at 6.) APCD filed the declaration of Michelle Gearheart ("Gearheart Decl."). (Doc. No.48-1.)[4] Ms. Gearheart states that after counsel for the State Defendants informed Plaintiff's counsel of the grounds for federal abstention in light of the 17CV-0576 case and their intention to file a motion to dismiss, counsel for the Air Resources Board suggested a joint meet and confer, and counsel for City Defendants indicated City Defendants' agreement in State Defendants' argument and requested to be included on the meet and confer conference. (Gearheart Decl. ¶ 5.) Plaintiff's counsel responded, copying all parties, and providing his availability. (Id.) Ms. Gearheart responded to the email chain, indicated the intention of APCD Defendants to file a motion to dismiss on the same grounds stated by State Defendants, and requested to be included in the global meet and confer. (Id. ¶ 6.) "Plaintiff's counsel never indicated that he was not agreeable to a global meet and confer and continued to copy [Ms. Gearheart] on email correspondence coordinating the meet and confer. A conference call was scheduled for the following week and the call-in information was circulated to all parties." (Id. ¶ 7.) Ms. Gearheart then emailed Mr. Roth a stipulation for his approval extending APCD Defendants' deadline by 30 days in light of the discussion surrounding a global meet and confer conference call. (Id. ¶ 8.) Mr. Roth responded that his client was not

[4] The Court DENIES Plaintiff's request (Doc. No. 51) that the Court not consider the Gearheart Declaration. The only case Plaintiff cites in support of its request – Provenz v. Miller, 102 F.3d 1478 (9th Cir. 1996) – is inapposite, as it was decided in the context of summary judgment, not Local Rule 7-3.

amenable to the requested extension and did not respond to Ms. Gearheart's further efforts to contact him. (Id. ¶ 11-12.)

"Decisions from the Central District of California reflect a flexible approach to the application of Local Rule 7-3." Threshold Media Corp. v. Relativity Media, LLC, 166 F. Supp. 3d 1011, 1015 (C.D. Cal. 2013) (collecting cases). "The purpose of Local Rule 7-3, as the Rule itself makes clear, is for 'counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion' so that they may 'reach a resolution which eliminates the necessity for a hearing.'" Id. (emphasis in original). In Threshold Media Corp., the court found that the defendants had satisfied the requirements of Local Rule 7-3 "in substance if not in form" where the plaintiff was on notice that the defendants intended to file a summary judgment motion, plaintiff had articulated its position against the motion, and the parties had several informal discussions regarding the motion. Id. at 1016-17.

Here, Plaintiffs do not dispute that they were on notice of APCD Defendants' intention to file the pending Motion to Dismiss. Upon careful review of counsel's respective declarations, the Court finds that Ms. Gearheart made a good faith attempt to comply with Local Rule 7-3 and reasonably assumed that Mr. Roth would have been amenable to an extension in light of the emails between the parties regarding a global meet and confer. Although Mr. Roth attempts to diminish the footnote in APCD Defendants' Notice of Motion (Doc. No. 33 at 4), his declaration does not dispute the claim that he was aware of the grounds for the Motion. Moreover, Plaintiffs cannot reasonably argue they have been prejudiced in any way by the filing of APCD Defendant's Motion. Therefore,

the Court declines to deny APCD Defendants' Motion for failure to comply with Local Rule 7-3.

**B. Younger Abstention**

APCD Defendants and State Defendants both argue that the Court should abstain from deciding Plaintiffs' ESA claim under the abstention doctrine espoused by the Supreme Court in Younger v. Harris, 401 U.S. 37 (1971). (Doc. No. 33 at 8-9; Doc. No. 40 at 17-20.)

"Younger abstention is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism." San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose, 546 F.3d 1087, 1091–92 (9th Cir. 2008). Younger cautions against federal interference with ongoing state criminal, civil, and administrative proceedings. See id. at 1092. Younger abstention is appropriate when (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) that the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing judicial proceedings. ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund, 754 F.3d 754, 758 (9th Cir. 2014).

The first factor favors abstention here. The Court has taken judicial notice of the State Court Action, Case No. 17CV-0576, filed on October 23, 2017, in San Luis Obispo Superior Court. (Doc. No. 33-2, Ex. 3; Doc. No. 41-4, Ex. 3.) By Plaintiffs' own admission in their "Notice of Pendency of Other Actions or Proceedings," "[t]he State Court action generally concerns the same subject matter [as the pending case] in that it also is a challenge to the to the actions of

the California Coastal Commission and other governmental entities with respect to the approval and permitting of certain dust control measures at Oceano Dunes State Vehicular Registration Area in San Luis Obispo County, California." (Doc. No. 4 at 2.)

Moreover, Plaintiffs' claim that the State Court action does not include the specific ESA claim at issue in this case is immaterial for purposes of the Younger analysis. The Ninth Circuit has held that in evaluating the first Younger factor, the inquiry is "focused on the narrow question of whether the [state proceedings] were pending at the time the federal suit was filed." San Remo Hotel v. City and Cty. Of San Francisco, 145 F.3d 1095, 1104 (9th Cir. 1998). Here, it is beyond dispute that the State Court Action was ongoing at the time Plaintiffs filed suit in this Court.

The second factor also favors abstention. This proceeding implicates important state interests, as it concerns the complex California statutory and regulatory framework regarding land use, environmental protection, and conservation through the various Defendants' roles in the implementation of the Dust Control Measures. California undoubtedly has a strong interest in these proceedings, and the Ninth Circuit has consistently recognized that "strong, local, i.e., municipal, interests in land-use regulation qualify as important 'state' interests for purposes of Younger abstention." Id. (citing Mission Oaks Mobile Home Park v. City of Hollister, 989 F.2d 359, 361 (9th Cir. 1993); see also Rancho Palos Verdes Corp. v. City of Laguna Beach, 547 F.2d 1092, 1094-95 (9th Cir. 1976) (recognizing California municipalities' interest in land-use regulation). This case is easily distinguishable from the lone case upon which

Plaintiffs hinge their argument – Potrero Hills Landfill, Inc. v. Cnty of Solano, 657 F.3d 876 (9th Cir. 2011).

In Potrero Hills, the Ninth Circuit determined that the second Younger factor did not weigh in favor of abstention, in large part because the "state proceedings were brought by private interest groups and therefore … would not interfere with the state's exercise of a basic state function and would not offend the principles of comity and federalism that Younger abstention was designed to uphold." See id. at 879, 885. Here, several local government entities and officials are named as Defendants and Plaintiffs filed this suit to challenge their decisions surrounding the implementation of the Dust Control Measures. The Potrero Hills panel contemplated this scenario, explicitly noting that had Solano County itself enforced the ordinance against the petitioner and denied it the permit, "no doubt the second Younger requirement would be satisfied." Id. at 885 (citing Woodfeathers, Inc. v. Washington Cnty., Or., 180 F.3d 1017, 1021 (9th Cir. 1999) ("[T]he County's enforcement of its solid waste ordinance implicates important state interests for the purpose of Younger v. Harris.").[5] Thus, under the reasoning set forth in Potrero Hills, the second Younger requirement is satisfied here.

The third factor likewise favors abstention. The State Court action provides Plaintiffs with an adequate opportunity to litigate their ESA claim. In Juidice v.

[5] For this reason, the Court rejects Plaintiffs' argument at the hearing that under Potrero Hills, the second Younger factor favors abstention only where the state itself has initiated an action in state court. As Defendants noted, the Ninth Circuit has found that all three Younger factors were satisfied where a private party initiated a mandamus action in state court challenging a decision made by a local government entity. See San Remo Hotel, 145 F.3d at 1104.

Vail, the Supreme Court held that the opportunity to present federal claims in state court proceedings is sufficient to invoke Younger abstention. 430 U.S. 327, 337 (1977). "Appellees need only be accorded an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings … and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." Id. Plaintiffs' argument regarding the ESA's 60-day notice requirement is unpersuasive. They offer no convincing support for the contention that this requirement compelled them to file a federal case, rather than amend the State Court action to include the federal ESA claim.[6] The Ninth Circuit has held that for purposes of Younger abstention, it "must assume that state procedures afford an adequate remedy, in the absence of unambiguous authority to the contrary." Baffert v. California Horse Racing Bd., 332 F.3d 613, 619 (9th Cir. 2003). Here, there is no such "unambiguous authority to the contrary," especially because the State Court action challenges the very same decision by the CCC that Plaintiffs challenge in this action, and the ESA claim is clearly derivative of this challenge.

[6] At the hearing, Plaintiffs argued that under California law regarding the relation-back doctrine, they are effectively precluded from amending their complaint to include the ESA claim. Plaintiffs directed the Court's attention to Quiroz v. Seventh Ave. Center, 140 Cal. App. 4th 1256, 1278 (2006), which holds that "[i]n order for the relation-back doctrine to apply, 'the amended complaint must (1) Rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original one." Even after considering this standard, the Court sees no reason why Plaintiffs could not amend their state court complaint to add the ESA claim. Notwithstanding the fact that California law does not protect the western snowy plover, Plaintiffs' goal of seeking to prevent the take of the western snowy plover under their ESA claim would be addressed through their efforts to enjoin Defendants from implementing the Dust Control Measures by their state court mandamus action.

The fourth factor favors abstention as well. In this case, Plaintiffs seek declaratory and injunctive relief stemming from an alleged violation of the ESA. Following the Ninth Circuit's guidance in Gilbertson v. Albright, 381 F.3d 965 (9th Cir. 2004), that Younger abstention need not require "direct interference" with the state proceedings, but only that "which would have the same practical effect on the state proceeding as a formal injunction," district courts considering whether to dismiss or stay federal cases involving declaratory or injunctive relief have found that the fourth requirement was satisfied. See, e.g., Burlington Ins. Co. v. Panacorp, Inc., 758 F. Supp. 2d 1121, 1136 (D. Haw. 2010); California Cnty. Superintendents of Schools Educational Ass'n (CCSESA) v. Marzion, No. C 08-04806 CW, 2009 WL 513742, at *5 (N.D. Cal Mar. 2, 2009); Lake Luciana, LLC v. County of Napa, No. C 09-04131 JSW, 2009 WL 3707110, at *2-3 (N.D. Cal. Nov. 4, 2009). Indeed, in AmerisourceBergen Corp. v. Roden, the Ninth Circuit indicated that when the requested relief in federal court is a declaratory judgment, that abstention to avoid concurrent, duplicative litigation may be appropriate. See 495 F.3d 1143, 1152 (9th Cir. 2007). As there is a great deal of overlap between the factual underpinnings of this case and the State Court action, and Plaintiffs seek injunctive and declaratory relief, proceeding in this case could have the practical effect of enjoining the State Court action.

Thus, as all four of the factors support abstention, the Court finds that Younger abstention applies in this case.

### C. Burford Abstention

APCD Defendants and State Defendants argue that this case "presents strong grounds for abstention under Burford v. Sun Oil Co., 319 U.S. 315 (1943)." (Doc. No. 40 at 20; Doc. No. 33 at 9-10.)

The Supreme Court has described Burford abstention as appropriate in instances where "the availability of an alternative, federal forum threaten[s] to frustrate the purpose of [a] complex administrative system [established by a state]." See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 725 (1996). "Burford allows a federal court to dismiss a case only if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Id. at 726 (internal citations and quotations omitted); see also Tucker v. First Maryland Sav. & Loan, Inc., 942 F.2d 1401, 1403 (9th Cir. 1991) ("Burford abstention is designed to limit federal interference with the development of state policy. It is justified where the issues sought to be adjudicated in federal courts are primarily questions regarding that state's laws."). The Ninth Circuit has clarified that there are three factors required for abstention under Burford to apply: "(1) that the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from complicated state law issues with which the state courts may have special competence; and (3) that federal review might disrupt state efforts to establish a coherent policy." Tucker, 942 F.3d at 1405. Although Burford abstention normally requires a district court to dismiss the case, the court may also stay the case pending the outcome of state proceedings. See id. n. 1.

The first factor favors abstention. APCD Defendants and State Defendants collectively sought judicial notice of three other state court lawsuits aside from the State Court action of which this Court took judicial notice (Doc. Nos. 41 & 33-2), and in their papers, assert that the suit before this Court is the eighth "in a

long line of cases" brought by Plaintiffs relating to the SVRA in San Luis Obispo County. (See Doc. No 40 at 11.) Plaintiffs claim that "all of the actions but one are stayed, resolved or dismissed." (Doc. No. 54 at 12.) The Court will not make a specific finding on this evidentiary issue, but observes that whatever the status of these state court proceedings, neither party appears to dispute that Plaintiffs have indeed filed several lawsuits in state court – and the Court has taken judicial notice that Plaintiffs filed three state lawsuits in addition to the State Court action. The Court agrees with State Defendants that in light of the statutes vesting the CCC with authority to regulate coastal development and land use, Cal. Pub. Res. Code §§ 30001-3004; 30210-30244; 30600(a), and California law providing that a writ of administrative mandate pursuant to section 1094.5 of the California Code of Civil Procedure is the exclusive remedy to challenge the CCC's decisions, "[t]hat exclusive statutory means of review also is the functional equivalent of concentrating suits involving the local issue in a particular court." (Doc. No. 40 at 22.) Indeed, the statutory and regulatory framework surrounding the CCC mirrors the factual underpinning of the original Burford case, in which Texas had established a complex regulatory scheme and its legislature established a system of thorough judicial review by its own state courts. See Burford, 319 U.S. at 325.

The second factor also favors abstention. Plaintiffs' claim that the federal ESA claim is easily separable from the state law actions is belied by the substantial factual overlap between their Complaint in this case and the State Court action. Although Plaintiffs assert that they filed the pending case in this Court to remedy the "take" of two federally-protected bird species that are not protected under state law, the thrust of the Complaint in this case is to challenge the Dust Control Measures and the application of state and local environmental

land use laws and regulations. Based on the Court's review of both the Complaint in this case and that in the State Court action, it appears likely that if Plaintiffs were to prevail in the State Court action and enjoin Defendants from enforcing the Dust Control Measures, their concerns about the "take" of the two bird species would also be addressed.

The third factor likewise favors abstention. By Plaintiffs' own admission, both this action and the State Court action challenge the implementation of the Dust Control Measures and the same decisions of local government entities and officials. Plaintiffs' argument that this action concerns the potential "take" of two federally-protected bird species is irrelevant to this factor, under which the Court analyzes whether "federal review might disrupt state efforts to establish a coherent policy." For the same reasons the second factor favored abstention – the substantial overlap between this case and the State Court action – the Court finds that its review of the Complaint would disrupt California's efforts to establish a coherent policy surrounding review of CCC decisions.

For these reasons, the Court concludes that Burford abstention should apply in this case.

**D. Colorado River Abstention**

State Defendants and APCD Defendants further contend that the Court should abstain under the doctrine set forth in Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800 (1975). (Doc. No. 40 at 23-27; Doc. No. 33 at 10-11.)

Under Colorado River, "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" may justify a stay of a federal action pending the outcome of concurrent state court proceedings concerning the same matter. Colorado River, 424 U.S. at 817. Because federal courts have a "virtually unflagging obligation" to exercise jurisdiction, id., "exceptional circumstances" must exist for a federal court to surrender jurisdiction under Colorado River. Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15-16 (1983). The Ninth Circuit examines eight factors to assess whether a stay or dismissal is appropriate under Colorado River:

> (1) which court first assumed jurisdiction over any property at stake;
> (2) the inconvenience of the federal forum;
> (3) the desire to avoid piecemeal litigation;
> (4) the order in which the forums obtained jurisdiction;
> (5) whether federal law or state law provides the rule of decision on the merits;
> (6) whether the state court proceedings can adequately protect the rights of the federal litigants;
> (7) the desire to avoid forum shopping; and
> (8) whether the state court proceedings will resolve all issues before the federal court.

Seneca Ins. Co. v. Strange Land, Inc., 862 F.3d 835, 841–42 (9th Cir. 2017). Courts "must carefully balance the important factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" Id. at 842.

The Court must deny a motion for stay pursuant to Colorado River, however, if there is any doubt that the state action would not end the federal action. Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 913 (9th Cir. 1993) ("[A] district court may enter a Colorado River stay order only if it has 'full

confidence' that the parallel state proceeding will end the litigation.") (quoting Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 277 (1988)); Tan v. GrubHub, Inc., 171 F. Supp. 3d 998, 1014 (N.D. Cal. 2016) ("Any such doubt as to resolution of the federal action compels the court to deny a Colorado River stay without consideration of the other factors."). "If there is any substantial doubt . . . it would be a serious abuse of discretion to grant the stay or dismissal at all." Moses H. Cone, 460 U.S. at 28.

The Court's analysis of the Younger and Burford abstention doctrines, supra, lead it to find that factors three, four, six, seven, and eight favor abstention. Regarding factor four, the State Court action, which was filed on October 23, 2017, indicates that the San Luis Obispo County Superior Court first assumed jurisdiction over the land at issue. Regarding factor six, the Court has already found that the Superior Court is an adequate forum for Plaintiffs' federal claim. Regarding factors three and seven, as discussed above, this case and the State Court action share a substantial factual overlap as both challenge the state and local government entities' implementation and review of the Dust Control Measures and the CDP authorizing them. This Court and the Superior Court reviewing the essentially the same claims challenging the Dust Control Measures could result in piecemeal litigation and would enable Plaintiffs to forum-shop. See R.R. Street & Co. Inc. v. Transport Ins. Co., 656 F.3d 966, 979 (9th Cir. 2011) ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."). Regarding factor eight, as previously noted, the State Court action has the potential to moot this case. There is no "substantial doubt" that a final determination in the State Court action will resolve the federal action. See Tan, 171 F. Supp. 3d at 1014.

The Court finds that factor one is neutral, as neither this Court nor the Superior Court has asserted jurisdiction over the property here. See Seneca Ins. Co., 862 F3d at 842. The Court also finds that factor two is neutral, as the land surrounding the SVRA is within the jurisdiction of this Court, and counsel for the various parties are located throughout California. Defendants concede that factor five weighs against abstention, as the Complaint here invokes a federal statute. (See Doc. No. 40 at 26.)

Nevertheless, although factor five weighs against abstention and factors one and two are neutral, the balance of the factors weighs in favor of abstaining. The Court is mindful that the balance initially weighs against abstention and that Colorado River abstention is only available in "exceptional circumstances." Seneca Ins. Co., 862 F.3d at 842. Nevertheless, under the weight of factor eight – which the Ninth Circuit has found to be dispositive, see Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 913 (9th Cir. 1993) – the Court finds that this case is indeed an exceptional circumstance warranting Colorado River abstention in light of the likelihood that a final determination in the State Court action will resolve the issues in this case.

## IV. CONCLUSION

The Court has determined that all three of the abstention doctrines invoked by State Defendants and APCD Defendants apply in this case.[7] The cumulative application of these abstention doctrines, however, does not amount to a failure by Plaintiffs to state a claim within the meaning of Rule 12(b)(6). In its discretion,

[7] For this reason, the Court declines to reach the parties' arguments regarding the Eleventh Amendment.

and considering that two groups of Defendants have filed Answers, the Court determines that a stay of these proceedings pending the resolution of the State Court action is the most appropriate manner in which to apply the abstention doctrines. See, e.g., Nakash v. Marciano, 882 F.2d 1411, 1413 (9th Cir. 1989). The Court therefore DENIES WITHOUT PREJUDICE APCD Defendants and State Defendants' Motions to Dismiss and GRANTS State Defendants' Motion to Issue a Stay. The parties shall file a joint status report regarding the State Court action every 120 days.

**IT IS SO ORDERED.**

Dated: 3/9/18

Virginia A. Phillips
Chief United States District Judge